**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

JAIME C. WILKINS                                                                                          WILKINS

V.                                                                        CIVIL ACTION NO. 1:12-CV-00147-SA-DAS

PLUMROSE USA, INC.                                                                                  DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff brought this action under Title VII alleging discrimination by Defendant because of her sex, creation of a hostile work environment, constructive discharge, and retaliation for engaging in protected activity. Defendant filed a Motion for Summary Judgment [25].[1] Upon due consideration of the motion, responses, rules, and authorities, the Court finds Defendant's Motion is well taken and shall be GRANTED.

*Factual and Procedural Background*

Jaime Wilkins was hired by Plumrose USA, Inc. as a line worker in its Booneville, Mississippi facility in September 2005. On June 27, 2009, Wilkins moved from the night shift to the day shift and began working under supervisor Rodney Gamble. Wilkins alleges that from the time she began working under Gamble until September 26, 2011, she endured inappropriate comments and unwanted touching by Gamble. She claims this mistreatment culminated in her being discriminated against because of her sex with regard to employee discipline and ultimately being constructively discharged from her position.

---

[1] Defendant also filed a Motion to Strike [31] Wilkins' Response in Opposition to the Motion for Summary Judgment arguing that such response was untimely and exceeded the allowable page limit set forth in the Local Uniform Civil Rules of the United States District Courts for the Northern and Southern Districts of Mississippi. Whereas Defendant was not prejudiced, the Court denies the Motion to Strike. See Edwards v. Cass Co., Tex., 919 F.2d 273, 275 (5th Cir. 1990) ("district court has broad discretion in controlling its own docket").

On September 25, 2011, Wilkins missed work due to an illness. She alleges that when she called in to notify Plumrose of her absence, Gamble failed to inform her of an upcoming pathogen test set for her next scheduled work day. On days when pathogen tests were administered, employees were required to report to work earlier than the usual time. Wilkins claims that she was unaware of the upcoming pathogen test and that she reported to work on September 26 at the normally scheduled time. Wilkins alleges that she received a penalty for her tardiness, but that a male employee who also arrived late for the test did not. As a result of this penalty, Wilkins was placed on attendance probation.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual

controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Analysis and Discussion*

Sex Discrimination

It is unlawful under Title VII for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Where, as here, a plaintiff relies only on circumstantial evidence to prove her discrimination claim, the Court utilizes the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). "Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003) (internal citations omitted).

If the plaintiff can establish a prima facie case, "the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action." Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259

(5th Cir.2009). If the defendant can articulate such a nondiscriminatory reason, the burden then shifts back to the plaintiff who must show at "a new level of specificity" that the explanation is merely a pretext for discrimination. Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir.1985), *abrogated on other grounds by* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 513, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). In the alternative, the plaintiff may show "that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quoting Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)). See also 42 U.S.C. § 2000e–2(m).

Defendant in this case contends that Wilkins cannot meet her initial burden of proving a prima facie case. "To establish a prima facie case [for discrimination], the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006) (internal quotations omitted). Defendant argues that Wilkins did not suffer an adverse employment action by being placed on attendance probation because probation is not an ultimate employment decision and thus not actionable discrimination. Wilkins responds by arguing that probation can be an adverse employment action when accompanied by a loss of benefits.

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002), *abrogated* by Burlington N. &

Sante Fe Ry. co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995), *abrogated* by Burlington, 548 U.S. at 68, 126 S. Ct. 2405; see also Drake v. Nicholson, 324 F. App'x 328, 331-32 (5th Cir. 2009).[2]

Wilkins acknowledges that the Fifth Circuit has previously declined to consider probation as an adverse employment action. See King v. La., 294 F. App'x 77, 84 (5th Cir. 2008) ("Our discrimination jurisprudence has held that. . . . being placed on probation do[es] not constitute [an] "ultimate employment decision[]."); Stewart v. Mo. Pacific R. Co., 121 F. App'x. 558, 562-63 (5th Cir. 2005) (finding no adverse employment action where employee was placed on one year of probation). However, Wilkins argues that while on probation she would have been required to obtain permission prior to taking leave time and that such a requirement constitutes a loss of a significant benefit of employment and is therefore actionable.

Joann Cutberth, Human Resources Manager for Defendant's Booneville facility, testified in her deposition that being placed on probation would have had no effect on Wilkins's ability to take vacation time that had been previously scheduled. She also

---

[2] In Burlington, the Supreme Court rejected the Fifth Circuit's use of the "ultimate employment decision" standard for Title VII retaliation claims. 548 U.S. at 67, 126 S. Ct. 2405. However, the Supreme Court's ruling did not disturb Fifth Circuit precedent restricting "adverse employment actions" to only "ultimate employment decisions" in the context of Title VII discrimination. Id. ("We therefore reject the standards applied in the Courts of Appeals that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.'"); see McCoy v. City of Shreveport, 492 F.3d 551, 560 (5th Cir. 2007) ("[O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims. . . .") (emphasis in original).

5

testified that while on probation, Wilkins would not have been precluded from taking additional time off as long as she sought preapproval from her supervisor. Wilkins offers no evidence to rebut this testimony.

While the Fifth Circuit has recognized leave time as a benefit and the granting of leave as an "ultimate employment decision," Wilkins does not argue that Defendant refused to grant her leave. Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 522 (5th Cir. 2001). Rather, Wilkins essentially asks the Court to find that the possibility that Defendant might have denied her leave at some point during her probation qualifies as an adverse employment action. The Court finds this argument to be unpersuasive. Accordingly, the Court finds that in failing to establish a genuine issue of material fact as to whether she suffered an adverse employment action, Wilkins has failed to establish a prima facie case for gender discrimination.

## Hostile Work Environment

Similarly, Defendant argues that Wilkins is unable to establish a prima facie case for her hostile work environment claim. "The plaintiff in a hostile work environment claim must establish that 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action." Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). However, the Fifth Circuit has held that "employees bringing a Title VII sexual harassment case alleging that a supervisor with immediate (or successively higher) authority over the employee harassed the

employee need only satisfy the first four elements of the test. . . ." Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).

Defendant argues that Wilkins was not subjected to sexual harassment by her immediate supervisor that was so severe or pervasive as to affect a term, condition, or privilege of her employment. "To affect a term, condition, or privilege of employment, 'sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 330 (5th Cir. 2009) (quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). Also, "[t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." Shepherd v. Comptroller of Pub. Accounts of State of Tex., 168 F.3d 871, 874 (5th Cir. 1999).

In evaluating the alleged conduct, the Court must look to the totality of the circumstances and consider such relevant factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" McKinnis v. Crescent Guardian, Inc., 189 F. App'x 307, 310 (5th Cir. 2006) (quoting Faragher v. City

7

of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (citation omitted)).

Defendant contends Wilkins is unable to establish that the alleged harassment was offensive, either objectively or subjectively. In addition to arguing that Wilkins's actions prove that she was not personally offended by her supervisor's alleged conduct, Defendant argues that the allegations of sexual harassment by its employee, even if true, were not so pervasive or severe in light of the totality of the circumstances to be actionable. Given relevant Fifth Circuit jurisprudence, the Court agrees that Wilkins has failed to allege conduct by Defendant's employee that would be actionable under Title VII.

"A Title VII plaintiff need only establish that the conduct was either severe or pervasive. '[I]solated incidents, if egregious, can alter the terms and conditions of employment.'" Id. (quoting Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 436 (5th Cir.2005)). In other words, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Lauderdale v. Tex. Dep't of Crim. Justice, 512 F.3d 157, 163 (5th Cir.2007).

Wilkins claims that, over approximately two years, Gamble called her "Blue Jeans" multiple times,[3] bumped his hips into her as she walked one time, touched her lower back on top of her clothes with his hand one time, touched her under her shirt on her bare back one time, and invited her over to see his house that was under

---

[3] Wilkins claims Gamble began using this nickname after an incident when the song "Baby's Got Her Blue Jeans On" was played on the radio in his office. Gamble allegedly told her "there's your song," which Wilkins took to be a sexual comment about her appearance in her clothes.

construction.[4] Wilkins testified in her deposition that Gamble called her "Blue Jeans" "probably about 10, 15 [times] maybe." Looking to the totality of the circumstances, this allegation combined with the four other isolated incidents cannot be said to have been harassment so pervasive as to have affected a term or condition of Wilkins's employment.

Likewise, the Court finds the alleged conduct was not so severe as to be actionable. Wilkins's allegation that Gamble called her "Blue Jeans" was at most the type of "simple teasing" that falls outside the realm of Title VII protection. See Faragher, 524 U.S. at 788, 118 S. Ct. 2275; Indest v. Freeman Decorating, Inc., 164 F.3d 258, 263 (5th Cir. 1999) ("Title VII is not a general civility code for the American workplace"). As to the allegation that Gamble bumped his hips into Wilkins one time, the Fifth Circuit has previously held that a factually similar incident was not severe. In Lauderdale, the Fifth Circuit agreed with the district court that a plaintiff whose supervisor grabbed her as she passed him in a hallway, pulled her to him, and touched his stomach to her lower back before she was able to pull away had failed to allege severe harassment. 512 F.3d at 161-63. Similarly, Wilkins' other allegations also fall far short of the mark established by the Fifth Circuit for severe conduct.[5]

---

[4] Wilkins alleges she asked Gamble what his wife would think about him inviting her over and that Gamble responded, "What she doesn't know, won't hurt her."

[5] See, e.g., Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir.2004) (holding that slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff was not severe harassment); Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 871–75 (5th Cir.1999) (holding that inappropriate comments, such as "your elbows are the same color as your nipples," and unwanted touchings, such as rubbing plaintiff's arm from shoulder to wrist, were not severe); Woods v. Delta Beverage Grp., Inc., 274 F.3d 295, 297 (5th Cir. 2001) (describing allegations of daily unwanted touching to plaintiff's neck and shoulders, touching of plaintiff's hair, holding and kissing plaintiff's hand, and touching plaintiff's blouse as presenting a "close question" as to whether sufficiently severe or pervasive).

Wilkins also attempts to argue that she was the victim of a hostile work environment based on complaints of harassment by other female workers against the plant manager at the Booneville facility. According to Joann Cutberth, a formal complaint alleging sexual harassment was filed against Michael Hall in early 2013. The internal investigation that followed revealed six female employees who complained of having been subjected to sexual harassment by Hall over the course of approximately one year. Hall was terminated following the investigation. Wilkins argues that Hall's close relationship with Gamble support her claim that she was subjected to a hostile work environment.

The Fifth Circuit has cited with approval the principle that "'[e]ven a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive." Waltman v. Int'l Paper Co., 875 F.2d 468, 478 (5th Cir. 1989) (quoting Vinson v. Taylor, 753 F.2d 141, 146 (D.C.Cir.1985), *aff'd.* 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)). Still, the Fifth Circuit has refused to consider reports of sexual harassment by others without proof that those incidents affected the plaintiff. Jones v. Flagship Int'l, 793 F.2d 714, 729 n.7 (5th Cir. 1986), *cert. denied,* 479 U.S. 1065, 107 S. Ct. 952, 93 L. Ed. 2d 1001 (1987).

Wilkins has offered no such proof. In fact, Wilkins offers no evidence that she was even aware of Hall's conduct and specifically testifies in her deposition that she had no problems with Hall and does not accuse him of sexually harassing her. The Court therefore finds that allegations of sexual harassment by Hall against other employees

10

occurring after Wilkins had ceased to be employed by Defendant do not establish a genuine issue of material fact as to her hostile work environment claim.

## Constructive Discharge

"To prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (quoting Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir. 1997)). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." Id.; Pa. St. Police v. Suders, 542 U.S. 129, 146-47, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). Whereas Wilkins has failed to establish that she suffered harassment so severe and pervasive as to maintain a hostile work environment claim, the Court finds she has likewise failed to establish a claim for constructive discharge.[6]

## Retaliation

Finally, Defendant argues that Wilkins is unable to establish a prima facie case for Title VII retaliation. "To establish a prima facie case of retaliation, [a] plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). Importantly, "[t]he antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington, 548 U.S. at 67, 126 S. Ct. 2405.

---

[6] In addition to the allegations of sexual harassment prior to September 26, 2011, Wilkins alleges Gamble and another supervisor yelled at her in Gamble's office on the day that she quit. The Court finds such alleged conduct insufficient to establish either Wilkins's hostile work environment claim or her constructive discharge claim. See Septimus, 399 F.3d at 612.

As with its challenge to Wilkins's discrimination claim, Defendant argues that probation is not an adverse employment action. However, unlike in the context of discrimination claims, the Supreme Court has held that an adverse employment action does not have to affect a term, condition, or status of employment to be actionable. Id. at 61, 126 S. Ct. 2405. To satisfy the adverse employment action requirement of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which. . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68, 126 S. Ct. 2405. Under this broader standard, the Court cannot so easily find that being placed on probation does not qualify as an adverse employment action. However, the Court is not required to make such a finding in this case as Wilkins's retaliation claim fails under the third prong of the prima facie test.

Defendant contends that, even if probation were to be an adverse employment action, Wilkins cannot prove a causal connection between her report of alleged discrimination to the plant manager and her being placed on probation. As the Supreme Court very recently explained, "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, --- U.S.---, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (June 24, 2013).[7]

---

[7] "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974). See also Mooney v. Lafayette Cnty. Sch. Dist., 2013 WL 4018662 (5th Cir. Aug. 8, 2013); Finnie v. Lee Cnty., Miss., 2013 WL 4852244 (5th Cir. Sept. 12, 2013); Feist v. La. Dep't of Justice, Office of the Atty. Gen., 2013 WL 5178846 (5th Cir. Sept. 16, 2013); Coleman v. Jason Pharm., 2013 WL 5203559 (5th Cir. Sept. 17, 2013).

In her response to Defendant's motion, Wilkins argues that she was placed on probation only after reporting to Hall the alleged disparate treatment she received when she was penalized for tardiness on September 26, 2011. She also argues that her harasser was the ultimate decision-maker in placing her on probation and that he did so to penalize her in retaliation for the denial of his sexual advances and for reporting his discrimination to Hall. However, the record indicates that, pursuant to Defendant's attendance policy, Wilkins was placed on probation after deliberation of the facility's upper level management because she had reached the requisite number of attendance/tardiness points.

Wilkins claims that on the day in question she arrived at work in time for her regularly scheduled shift. It was at that point, according to Wilkins, that she first learned of the pathogen test that had been scheduled to take place an hour earlier. After Gamble notified her that she would be penalized for tardiness, Wilkins complained to Hall about receiving a tardiness penalty when another male coworker did not.

Hall testified in his deposition that he then called Gamble into his office in an attempt to investigate Wilkins's complaint. Gamble and Joann Cutberth both testified in their depositions that they then met with Hall to discuss whether or not Wilkins should be penalized. Cutberth testified that Hall, not Gamble, made the final decision to penalize Wilkins. Cutberth also testified that it was not until after this meeting that anyone became aware that the penalty would trigger Wilkins being placed on attendance probation. She testified that Gamble, upon realizing the penalty would result in Wilkins exceeding the allowable number of absences in a designated period and that she would

therefore be placed on probation, again met with Hall and Cutberth to discuss the situation. Again, all three decided that probation was appropriate, and Cutberth signed off on the probationary paperwork.

Wilkins claims Gamble called her into his office sometime around 2:00 pm that day and notified her that she was being placed on probation and that she was required to sign papers that she did not have time to read. Jerry Henderson, an assistant supervisor, testified in his deposition that Wilkins turned her timecard into him sometime thereafter and told him that she was quitting.

Contrary to Wilkins's assertions, it is clear from the record that the decision to penalize her for being tardy on September 26, 2011 was not made solely by her allegedly harassing supervisor. Rather it was reviewed by the HR manager and the plant manager who made the ultimate decision. Wilkins offers no evidence to the contrary. Further, Wilkins does not dispute the number of absences allowed under Defendant's policy before an employee would be placed on probation. Additionally, she does not dispute that the penalty she received on September 26, 2011 placed her over that limit.[8] Wilkins has offered no evidence to rebut the testimony that before notifying Wilkins of her probationary status, Gamble again met with Hall and Cutberth and received the approval of Cutberth. Though it is undisputed that Wilkins was placed on probation after she complained to Hall, the Court finds, based upon the undisputed testimony regarding Defendant's attendance policy and Wilkins's attendance record on the day in question,

---

[8] Wilkins testified in her deposition that she only contested two penalties on her record: the tardy penalty on September 26, 2011 and another tardy penalty from the previous November, which would have had no bearing on Defendant's decision to place her on probation as it fell outside of the designated time period for allowable absences.

14

that Wilkins has failed to establish a genuine issue of material fact as to whether her complaint was the but-for cause of her probation.

*Conclusion*

For the foregoing reasons, the Court finds Defendants' Motion for Summary Judgment [25] is GRANTED. A separate order to that effect shall issue this day.

SO ORDERED on this, the 1st day of October, 2013.

                                                **/s/ Sharion Aycock**
                                                **UNITED STATES DISTRICT JUDGE**